**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EMANUEL JENKINS** | : | |
| | : | |
| **v.** | : | **C.A. NO: 04-453S** |
| | : | |
| **STATE OF RHODE ISLAND, State Police Department, STEVEN M. PARE, individually and in his official capacity as Superintendent of the Rhode Island State Police, MATTHEW MOYNIHAN individually and in his official capacity as a state trooper employed by the State of Rhode Island, Rhode Island State Police, DEREK BOREK, individually and in his official capacity as a state trooper employed by the State of Rhode Island, Rhode Island State Police** | : | |

**DEFENDANT STATE OF RHODE ISLAND'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTIONS TO PLAINTIFF'S MOTIONS TO COMPEL**

The Defendant State of Rhode Island objects to Plaintiff's MotionS to Compel a More Responsive Answer to Interrogatory Number 6 and Request for Production of Documents Number 3. Interrogatory Number 6 asks Defendant State to:

> [d]escribe in detail any policy, procedure, guidelines or custom of the Defendant Rhode Island State Police Department (:Department") relative to the selection, training, instruction and supervision of police officers of the Department regarding investigatory stops, search, seizure and arrests, as well as use of force, in existence as of the date of the incident as well as any and all changes and or amendments made subsequent thereto.

The Defendant State responded as follows:

> Objection. The interrogatory is overly broad, unduly burdensome not likely to lead to the discovery of admissible evidence at trial and protected by the law enforcement privilege. Without waiving said objection,

> Defendant State refers Plaintiff to the Use of Force Policy produced in Defendant State of Rhode Island's Response to Request No. 3 of the Request for Production of Documents.

Request Number 3 asks Defendant State to produce:

> Produce a copy of any and all documents describe or embodying any policy, procedure, guidelines or custom relative to selecting, training, instructing, and supervising troopers in the Department regarding investigatory stops, search, seizure and arrests as well as use of force in existence as of the date of he incident as well as any changes and/or amendments made subsequent thereto.

The Defendant State responded as follows:

> Objection. The interrogatory is overly broad, unduly burdensome not likely to lead to the discovery of admissible evidence at trial and protected by the law enforcement privilege. Without waiving said objection, Defendant State produces the use of force policy in effect at the time of June 25, 2002 attached "Response to #3".

The Defendant State submits that the Plaintiff in this case has not fulfilled the requirements set forth in Association for Reduction of Violence v. Hall, 734 F.2d 63 (1st Cir. 1984) by demonstrating a threshold of need, amounting to more than mere speculation. Plaintiff needs to demonstrate, in light of the claims he has asserted and of those claims only the legally competent ones, a showing of need. Moreover, the documents are protected by the law enforcement privilege.

Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure "Privileged matters are, of course, outside the scope of discovery." *Dowd v. Calabrese*, 101 F.R.D. 427, 430 (D.D.C. 1984). The law enforcement privilege is among the panoply of privileges, "routed in common sense as well as common law, . . . [which] share with each other and the constitutional privileges, the common matrix of pragmatic adjustment to the needs of sound government." *Black v. Sheridan Corporation of America*, 564 F.2d 531, 542 (D.C. Cir. 1977).

The law enforcement privilege has been incorporated into various state and federal Freedom of Information Acts. Its purpose:

> . . . is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

In re: Dept. of Investigations of City of New York, 856 F.2d 481, 484 (2nd Cir. 1988) (Emphasis added). Application of this privilege is committed to the sound discretion of the trial court, Brown v. Thompson, 430 F.2d 1214, 1216 (5th Cir. 1970), United States v. Green, 670 F.2d 1148, 1156 (D.C. Cir. 1981), and may be interpreted "in the light of reason and experience." Fed. R. Evid. 501. The privilege is qualified, rather than absolute. When the claim of privilege is made, the demanding party has burden of showing his or her need for disclosure. In addressing whether or not disclosure should be made the court should address the following issues:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1345 (D.C. Cir. 1984).

One of the purposes of the law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference in an investigation." *Morrissey v. The City of New York*, 171 F.R.D. 85, 90 (S.D.N.Y 1997). It is not a requirement that an investigation needs to be ongoing in order for the privilege to be applicable. *Morrissey*, 171 F.R.D. at 90 (*citing*, *Borchers v. Commercial Union Assur. Co.*, 874 F.Supp. 78, 80 (S.D.N.Y.1995); *Black*, 564 F.2d at 546 (D.C.Cir.1977)). "As Judge Cote makes clear in *Borchers*, the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed. *Borchers*, 874 F.Supp. at 80." *Id*.

In *Morrissey*, the New York District Attorney's Office ("DA"), injunction with the NYPD's Internal Affairs Bureau ("IAB"), were conducting an investigation into corrupt police practices. 171 F.R.D. at 87. Police Officer Jorge Alvarez had initially been under investigation and subsequently cooperated with the DA and IAB. *Id*. While at the police precinct Alvarez shot the Plaintiff Stephen Morrissey in the foot during a scuffle between the men, during which plaintiff referred to Alvarez as a "rat". *Id*. Plaintiff filed a civil law suit under 42 U.S.C. §1983 against Alvarez claiming that he violated his Fourth and Fifth Amendment rights and against the City of New York and the DA for engaging in a policy of reckless disregarding the rights of persons like plaintiff by failing to adequately train and supervisor individuals who cooperated in the corruption investigation. *Id*. Among other documents requested in discovery, Plaintiff sought from the defendants describe "the method by which the tape recoding device used by

defendants was placed on the cooperator's person." Id. at 88. Defendants objected based on relevance and the law enforcement privilege. Id. The Court sustained the objection. The Court found that the plaintiff's need for this information is virtually nonexistent and the defendants demonstrated that "this information were it publicly available, would seriously compromise future law enforcement investigations." Id. at 91.

In this case, Plaintiff seeks documents containing "policy, procedure, guidelines or custom relative to selecting, training, instructing, and supervising troopers in the Department regarding investigatory stops, search, seizure and arrests as well as use of force". The Defendants have produced their Use of Force policy. The Defendants object to producing the remaining policies based on relevance and the law enforcement privilege.

First, Plaintiff by his own admission does not dispute his arrest on June 25, 2002. See Exhibit A. Thus, any documents regarding arrests are irrelevant. The Plaintiff cannot show that his need is so great as to pierce the law enforcement privilege. A disclosure of any responsive documents could reveal law enforcement techniques that both the plaintiff and the general public could use the information to thwart future police investigations and arrests.

Second, the Plaintiff's seeking of any documents relating to policies or procedures on searches and seizures is irrelevant. The undisputed facts of this case demonstrate that any search or seizure that was conducted on June 25, 2002 was reasonable and complied with the Fourth Amendment requirements. Moreover, with regard to any claim of excessive force, which would constitute a seizure under the Fourth Amendment, Defendant has already provided Plaintiff a copy of its Use of Force Policy. Moreover, to

provide such records may certainly impact future investigations if made public.

Lastly, defendants objected to the production of any documents or information relating to investigatory stops. The undisputed facts of this case are that:

> On June 25, 2002 Woonsocket Police issued a BOLO broadcasted over the Inter-City network with attention to North Smithfield, Lincoln, Cumberland and the Rhode Island State Police. The radio broadcasts stated:
>
> > Woonsocket P.D. to surrounding communities: Please be on the lookout for Rhode Island vanity plate AARONJ, A-Alpha, A-Alpha, R-Romeo, O-Oscar, N-November, J-Juliette. AARONJ. It's a green SUV, possibly a ninety (static) '97 Ford SUV, color green, possibly an Explorer. Described as a hunter green SUV with deep tinted windows. Use caution. Possible handgun was shown. At this time we're entertaining a complaint – at this time we're entertaining a complaint for ADW. Again, it's a silver or a blue small—caliber handgun. Two black males in the vehicle, deep tinted windows, unknown additional occupants. A twen—possibly a .25 or a .22 auto. Again, its AARONJ, green SUV. Use caution if contacted. Woonsocket is going to be cleared at 1611.
> >
> > ***
> >
> > ...(unintelligible) and surrounding communities: In reference to the BOLO on AARONJ, that's Rhode Island vanity plate AARONJ, '97 Ford Explorer, color green. At this time we do not have a complaint; however we did take an incident report from two separate sources that did confirm that they did see a --- a handgun. Again, use caution if the vehicle's located. There is no active complaint for ADW; however, we do had reason to believe there is a handgun inside the vehicle. Woonsocket's cleared at 16:18.

*Exhibit B.* The State Police acknowledged receipt of the BOLO and transmitted the information to its cruisers out of the Lincoln and Chepachet barracks. After hearing the broadcast, Trooper Moynihan confirmed through the computer in his cruiser that the vehicle plate "AARONJ" matched the description of the vehicle. Soon thereafter, Trooper Moynihan saw the green Ford Explorer bearing the plates AARONJ traveling on Route 146 south and radioed the information to the R.I. State Police barracks. Trooper Moynihan advised that he would not stop the vehicle until back up had arrived. It is

undisputed that Plaintiff was the driver of this very vehicle on June 25, 2002. Troopers Moynihan and Borek conducted an investigatory stop of Plaintiff's vehicle.

As this Court is well aware, the Fourth Amendment permits law enforcement officers to conduct an investigatory stop if they have "reasonable and articulable suspicion" of past or present criminal activity. *Flowers v. Fiore*, 359 F.3d 24, 29 (1st Cir.2004) (citing *United States v. McCarthy*, 77 F.3d 522, 529 (1st Cir.1996)). The undisputed evidence of this case demonstrates that there was a reasonable and articulable suspicion of past and/or present criminal conduct an investigatory stop of Plaintiff's vehicle on June 25, 2002. Thus any such policies would not be relevant.

Second, the disclosure of any documents relating to policies or procedures of investigatory stops could jeopardize the physical safety of state police troopers during investigatory stops or unnecessarily reveal law enforcement techniques. The United States Supreme Court recognized in *Terry* the balance between an individual's Fourth Amendment rights and the safety of law enforcement. The *Terry* Court explained:

> …we are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country may law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

392 U.S.at 23, 88 S.Ct. at 1881. Referencing the same resource[1] as the United States Supreme Court did in *Terry*, in 2001 one hundred forty-two (142) law enforcement

[1] Federal Bureau of Investigation, Uniform Crime Reports for the United States, 2001

officers were feloniously killed in the line of duty in this country bringing the total to six hundred forty-three (643) for the period of 1992 to 2001.[2] In 2001, nine officers were killed in traffic pursuits or stops[3]. Between 1992 and 2001, 97 out of the 643 law enforcement officers that were killed occurred during a traffic pursuit or stop. *Id*.

The *Terry* Court extrapolated that:

> [I]n view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situation where they may lack probably cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be unreasonable to deny the officer the power to take the necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Id*. at 1882. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. at 1883. Following the Supreme Court's lead, the First Circuit has held that "[w]hile Terry Stops generally are fairly unintrusive, we have repeatedly stressed that officers may take necessary steps to protect themselves if the circumstances reasonably warrant such measures. *See United States v. Lee*, 317 F.3d 26, 31-32 (1$^{st}$Cir. 2003); *United States v. Acosta-Colon*, 157 F.3d 9, 18 (1$^{st}$Cir. 1998); *United States v. Trullo*, 809 F.2d 108, 113 (1$^{st}$Cir. 1987)." *Flowers*, 359 F.3d at 30. Disclosure of policies relating to investigatory stops could jeopardize the safety of officers when conducting such a stop in the future. Wherefore, the Defendant State of Rhode Island submits the factors supporting the law enforcement privilege outweighs the plaintiff's need for such documentation or information in this case.

---

[2] See Tables 2 and 3

[3] See Table 17.

Wherefore, the Defendant State of Rhode Island prays that this Court denies Plaintiff's motion to compel a More Responsive Answer to Interrogatory Number 6 and Request for Production of Documents Number 3.

Respectfully Submitted,

DEFENDANT
STATE OF RHODE ISLAND

By its Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Brenda D. Baum (5184)
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-3016

CERTIFICATION

I hereby certify that on this 11th day of May 2006 a true copy of the within Memorandum of Law in Support of the Defendants' Objection was mailed and sent by facsimile to:

V. Edward Formisano, Esquire
Sinapi, Formisano & Company
100 Midway Place, Suite 1
Cranston, RI 02920