**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EMANUEL JENKINS,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No. 04-453S** |
| | : | |
| **STATE OF RHODE ISLAND, et al.,** | : | |
| **Defendants** | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff in the above-cited matter and does hereby object to Defendants' Motion for Summary Judgment and as grounds therefore and in support thereof relies on his Memorandum of Law filed simultaneously herewith.

**WHEREFORE**, the Plaintiff respectfully prays that Defendants' Motion for Summary Judgment be denied.

PLAINTIFF,
By his Attorneys,
SINAPI, FORMISANO & CO., LTD.

Dated: June 14, 2006

V. Edward Formisano (5512)
100 Midway Place
Cranston, RI 02920-5707
(401) 944-9690
(401)943-9040 (facsimile)

**CERTIFICATION**

To: Brenda D. Baum, Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that the within document was caused to be mailed, postage prepaid, to the above-cited attorney of record on this 14 day of June, 2006.

Katherine Kessinger

VEF/jenkins.obj.msj.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EMANUEL JENKINS,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No. 04-453S** |
| | : | |
| **STATE OF RHODE ISLAND, et al.,** | : | |
| **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION F0R SUMMARY JUDGMENT**

Respectfully submitted,
PLAINTIFF,
By his Attorneys,
SINAPI, FORMISANO & CO., LTD.

V. Edward Formisano (5512)
100 Midway Place
Cranston, RI 02920-5707
(401) 944-9690
(401)943-9040 (facsimile)

# I. Pleadings

## A. Plaintiff's Complaint

On or about June 25, 2003, the Plaintiff was operating a vehicle owned by his mother vehicle on Route 95 South in Providence, Rhode Island. (Complaint at ¶9). While traveling on Route 95, the Plaintiff observed a marked police cruiser that then began to follow the Plaintiff's vehicle. Id. at ¶¶11-12. The Plaintiff then exited Route 95 South, at the Thurbers Avenue exit, followed by the police cruiser and immediately pulled his vehicle over to the side of the road after the cruiser engaged its overhead lights. Id. at ¶¶13-15. After the Plaintiff stopped, the police cruiser stopped in the vicinity of the driver's side of Plaintiff's vehicle; another cruiser, operated by Defendant Borek, stopped behind the Plaintiff's vehicle. Id. at ¶16.

Defendant Moynihan then exited his police cruiser with his weapon drawn and approached the driver's side of the Plaintiff's vehicle. Id. at ¶17. Defendant Moynihan then directed the Plaintiff and his passenger to put their hands out of the windows of the vehicle. Id. at ¶18. The Plaintiff and his passenger immediately complied with Defendant Moynihan's command and placed both their hands out the vehicle's windows. Id. at ¶19. Defendant Moynihan then began to move towards the Plaintiff's vehicle and attempted to open the driver's side door of the Plaintiff's vehicle while pointing his weapon at the Plaintiff. Id. at ¶20. Defendant Moynihan could not open the driver's side door of Plaintiff's vehicle because it was locked. Id. at ¶21. The Plaintiff, in response to a command to open the door, attempted to engage the automatic lock for the doors with his right hand. Id. at ¶22; Plaintiff's Appendix in Support of Objection to Defendants' Motion for Summary Judgment ("Plaintiff's Appendix"), Exhibit A, p. 44. As the door unlocked, Defendant Moynihan discharged his weapon and shot the Plaintiff. Complaint at ¶23.

Defendants then called for medical assistance, an ambulance responded, and the Plaintiff was then transported to Rhode Island Hospital. Id. at ¶¶ 28-30.

The Plaintiff was subsequently arrested and charged with driving with a suspended license and held on an outstanding warrant in connection therewith. Id. at ¶32.

Based on the foregoing, the Plaintiff filed this action seeking relief for injuries that he suffered as a result of acts and/or omissions of Defendants in violation of the Fourth Amendment to the U.S. Constitution, actionable pursuant to 42 U.S.C. §1983, Article I, §6 of the Rhode Island Constitution and common law.

**B. Defendants' Answer**

Defendants admit that after stopping the Plaintiff's vehicle a trooper approached the driver's side with his weapon drawn. (Answer at ¶17). Defendants admit that a trooper directed the Plaintiff and his passenger to put their hands out of the vehicle's windows and that both parties complied with this order. Id. at ¶¶18-19.

Defendants deny that Defendant Moynihan moved towards the Plaintiff's vehicle and attempted to open the driver's side door. Id. at ¶20. Defendants deny that Defendant Moynihan could not open the door because it was locked. Id. at ¶21. Defendants are without sufficient information or belief to respond to the allegation that the Plaintiff unlocked the door and was shot, and, therefore, deny the allegation. Id. at ¶23.

## II. Description of Motion

Defendants have moved for summary judgment on the grounds that a 42 U.S.C. §1983 claim cannot be brought against the State and Defendants Moynihan and Borek in their official capacities, that the 42 U.S.C. §1983 claims against Defendants Moynihan and Borek in their individual capacities should be dismissed on the grounds of qualified immunity or the absence of a constitutional violation, and that the Plaintiff's common law claims should be dismissed due to the purported existence of probable cause and the application of qualified immunity.

## III. Facts[1]

On June 25, 2002, the Plaintiff and an acquaintance, Howard Soares, traveled from Providence to Woonsocket to drop-off the Plaintiff's daughter at her mother's home. Plaintiff's Appendix, Exhibit A, pp. 37-38. The Plaintiff was operating a Ford Explorer with tinted windows in the rear of the vehicle. Id. at 47-48.

Returning to Providence, the Plaintiff passed a barbershop in Woonsocket. Id. at 42. While in front of the barbershop, the Plaintiff observed an individual who had previously attacked the Plaintiff. Id. at 23-26; 42-44. The individual appeared to be angry and stated that he was "going to handle it." Id. at 44. After 30 seconds, the Plaintiff drove off towards Providence. Id.

Once on Route 146, the Plaintiff noticed a police cruiser following him. Id. at 47. When the Plaintiff took the Thurbers Avenue exit off of Route 95, the police cruiser activated its lights and the Plaintiff "pulled right over." Id. After the Plaintiff pulled over, another police cruiser appeared. Id. Defendant Moynihan exited his cruiser, pointed his service weapon at the Plaintiff and ordered him to put his hands out the window of his vehicle. Id. at 50. The Plaintiff rolled down his window and placed his hands out the window; Mr. Soares also placed his hands out the window. Id. at 51; 55. During this time period, the Plaintiff was facing Defendant Moynihan who had his service weapon aimed at the Plaintiff and Defendant Borek was positioned on the passenger side of the Plaintiff's vehicle with a shotgun aimed at Mr. Soares. Id. at 54-55.

After the Plaintiff and Mr. Soares placed their hands out the windows of the vehicle, Defendant Moynihan approached the driver's side of Mr. Jenkins vehicle with his service weapon aimed at the Plaintiff. Id. at 56. Defendant Moynihan then attempted to open the driver's side door; however, the door was locked. Id. Defendant Moynihan then pointed at the control to unlock the door and told the Plaintiff to "unlock the door." Id. at 58. The Plaintiff complied by removing

[1]The Plaintiff incorporates herein by reference his Statement of Disputed Facts.

his hand from outside of the vehicle and moving it slowly towards the control that unlocked the door. Id. at 58-59. As he engaged the control, Defendant Moynihan discharged his service weapon and shot the Plaintiff who was unarmed. Id. at 59-60.

## IV. Issues

1. Whether the Plaintiff can maintain §1983 claims against either the individual Defendants in their official capacities or Defendant State.

2. Whether Plaintiff has alleged sufficient facts to establish that he was subjected to a violation of his Fourth Amendment right to be free from unreasonable searches and seizures actionable pursuant to 42 U.S.C. §1983.

3. Whether the Plaintiff's §1983 claims are barred by the doctrine of qualified immunity.

4. Whether the Plaintiff's common law claims are barred by the doctrine of qualified immunity.

## V. Points and Authorities

### A. Standard of Review in Considering a Motion for Summary Judgment.

Summary judgment is a drastic remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. International Ins. Co. v. Metro. St. Louis Sewer Dist., 938 F.Supp. 568 (E.D.Mo. 1996). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996); Fed.R.Civ.P. 56(c). The trial court may search for the existence of factual issues, but may not determine them, Steinberg v. State, 427 A.2d 338 (R.I. 1981); nor may the trial court assess the weight or the credibility of the evidence. Doyle v. State, 411 A.2d 907 (1980). In reviewing a motion for summary judgment, a court is obliged to view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in that

party's favor. Fennell v. First Step Designs, Ltd., 83 F.3d 526, 534 (1st Cir. 1996); National Credit Union Admin. Bd. v. Regine, 795 F.Supp. 39, 62 (D.R.I. 1992). At the summary judgment stage, a court should ask itself whether the plaintiff could prevail if a jury or judge believed the plaintiff's version of the facts and disbelieved the defendant's version. Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 929 (1st Cir. 1983). Accordingly, summary judgment will not lie if the dispute about a material fact is "genuine," that is, the evidence is such that a reasonable jury could return a verdict for the non-moving party when construing all evidence in the record and inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986).

**B. The Plaintiff's Claims Against Defendants for Declaratory and Injunctive Relief Are Not Barred by U.S. Supreme Court Precedent.**

Defendants claim that the Plaintiff cannot maintain claims against Defendant State and the individual Defendants in their official capacity for either declaratory relief or money damages. While the Plaintiff agrees with Defendants with regard to official capacity §1983 claims where a party is seeking money damages and §1983 claims against a state for money damages, the Plaintiff has also asserted claims pursuant to §1983 against Defendants where he has prayed for declaratory and injunctive relief. These claims as pled in the Complaint are viable and Defendants' Motion should therefore be denied. Will v. Michigan Dept. of State Police, 491 U.S. 58, 89-90, (1989)(citing Papasan v. Allain, 478 U.S. 265, 282 (1968); Quern v. Jordan, 440 U.S. 332, 337 (1979); Milliken v. Bradley, 433 U.S. 267, 289 (1977)).

**C. Because Genuine Issues of Material Fact Exist Relative to the Existence of Constitutional Violations, Defendants' Motion Should Be Denied.**

Defendants claim that there is no factual issue related to Plaintiff's claim under 42 U.S.C. §1983 due to the absence of a constitutionally protected right.[2] In support of this contention,

[2] The Plaintiff will not press an objection as to the following issues raised by Defendants: "stop and approach of Jenkins' car"; "handcuffing of Plaintiff on Ground"; "Terry Patdown"; "Removal from Vehicle and Stepping on Back"; "Search of Jenkins' Car."

Defendants argue that the Plaintiff did not have a constitutional right under the Fourth Amendment to be protected from an unreasonable seizure. The Plaintiff maintains that the facts alleged support his §1983 claim and therefore Defendants' Motion should be denied.

§1983 provides, in part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." §1983 does "not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Thus, to establish a claim under §1983, a plaintiff must demonstrate: "[f]irst, that the defendants acted under color of state law; and second, that the defendants' conduct worked a denial of rights secured by the Constitution or by federal law." Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995).

The protections of the Fourth Amendment, made applicable to the states through the Fourteenth Amendment, are fundamental to the rights of all American citizens. Buenrostro v. Collazo, 973 F.2d 39, 43 (1st Cir. 1992). The Fourth Amendment "guarantees…every person's right to be free from unreasonable searches and seizures." Id.; see Payton v. New York, 445 U.S. 573, 585 (1980). A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989). Stated differently, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1967). A shooting by an officer can constitute a "seizure" under the Fourth Amendment. See Plaintiff's Appendix, Exhibit C (Memo. and Order Requiring State to Submit Materials for In Camera Review (C.A. 04-453 S)(May 15, 2006)(Martin, U.S. Mag. J.)); Tennessee v. Garner, 471

U.S. 1, 7 (1985)("there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"); see also Ciminillo v. Streicher, 434 F.3d 461, 466 (6th Cir. 2006); see also Smith v. Cupp, 430 F.3d 766,774 (6th Cir. 2005). In the present case, there can be no question that after the Plaintiff was shot by Defendant Moynihan, he was "seized" under the Fourth Amendment.

A defendant state actor violates the Fourth Amendment and is liable under §1983 only if the particular seizure was "objectively unreasonable." Graham v. Connor, 490 U.S. 386, 394 (1989); see Maiorana v. MacDonald, 596 F.2d 1072 (1st Cir. 1979).

In the case at bar, Defendants used deadly force in seizing the Plaintiff.[3] In "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham 490 U.S. at 396 quoting United States v. Place, 462 U.S. 696, 703 (1983). Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application…however, its' proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979); see also Garner, 471 U.S. at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of…seizure"). Moreover, the "'reasonableness' inquiry in is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.

---

[3] "The use of deadly force is constitutional only if, at a minimum, a suspect poses an immediate threat to police officers or civilians." Jarret v. Town of Yarmouth, 331 F.3d 140, 149 (1st Cir. 2003); see Garner, 471 U.S. at 11.

Viewing all facts in the light most favorable to the Plaintiff, and applying the Graham analysis referenced above, it is plainly evident that material factual issues exist pertaining to whether Defendants Moynihan and Borek's actions in effectuating the seizure of the Plaintiff were objectively reasonable under the facts and circumstances of this case.

There is considerable evidence that weighs against a finding that Defendants actions were "objectively reasonable."[4]

In the first instance, the Plaintiff was not engaged in criminal conduct when he was shot by Defendant Moynihan.[5]

Second, the Plaintiff's conduct did not suggest that he posed an immediate threat to the safety of the officers. To the contrary, from the initial contact between the Plaintiff and Defendants, he complied with the commands of the police: he pulled his vehicle over to the side of the roadway, he kept his hands out the window of his vehicle, and he unlocked the door. Additionally, he was not armed and never posed a threat to the safety of the Defendants or to others.[6]

To be considered along with the second element of the Graham analysis is the fact that Defendants Moynihan and Borek failed to adhere to the proper tactics and procedures relative to high-risk felony motor vehicle stops.[7] Police officers are trained both in Rhode Island as well as throughout the country to follow well-defined procedures and tactics to extricate a possibly

---

[4] In their Memorandum, Defendants repeatedly make reference to what Defendant Moynihan "believed" the Plaintiff was doing when the Plaintiff removed his hand from outside of the vehicle, apparently, to justify his shooting of an unarmed person. See e.g., p 37. The subjective state of mind of either of the individual Defendants is irrelevant in undertaking the objective reasonableness inquiry under Graham.

[5] The fact that a plaintiff had committed no crime at the time of seizure weighs against a finding of reasonableness." Ciminillo, 434 F.3d at 467, citing Bailey v. Kennedy, 349 F.3d 731 (4th Cir. 2003); Kostrzewa v. City of Troy, 247 F.3d 633 (9th Cir. 2001).

[6] The use of deadly force has been found to be objectively unreasonable against a visibly armed plaintiff who had his hands over his head in the "surrender position." Ciminillo, 434 F.3d at 467 citing Robinson v. Nolte, 77 Fed.Appx. 413 (9th Cir. 2003).

[7] According to David M. Grossi, a law enforcement training consultant that has been retained by the Plaintiff in this matter, high-risk felony motor vehicle stops are vehicle stops wherein police officers "usually know, or have a strong probable cause to believe, they are dealing with armed and/or possibly dangerous offenders."

dangerous offender from a motor vehicle without the use of force.[8] Even though Defendants Moynihan and Borek were trained in such tactics and procedures,[9] they failed to follow same.[10] In fact, Defendants Moynihan and Borek violated the "only absolute" regarding high-risk vehicle stop tactics—both Defendants approached Plaintiff's vehicle on foot while the vehicle was still occupied.[11] See Plaintiff's Appendix, Exhibit B, at ¶¶8; 11. According to the Plaintiff's expert on police procedures and tactics, the tactics employed by "both Defendants Moynihan and Borek were procedurally improper, tactically unsafe, and well below the nationally accepted standard of the law enforcement industry for high-risk vehicle stops." Id. at ¶12. Defendants Moynihan and Borek's failure to follow these procedures in executing the high-risk vehicle stop and directly contributed to the Fourth Amendment violation at issue.[12]

Thirdly, there is no evidence to suggest the Plaintiff was attempting to resist or evade arrest by flight. To the contrary, by moving his hand from the outside of the vehicle to the door panel to unlock the door the Plaintiff was attempting to comply with Defendant Moynihan's command.

---

Plaintiff's Appendix, Exhibit B, at ¶5.

[8] The nationally accepted law enforcement standards for a high-risk felony vehicle stop are as follows: first, the police officers should establish and remain behind cover; second, the police officers should announce their purpose and relay their commands to the occupants of the vehicle either by loud voice or via the PA system of their police vehicles; third, police officers should immobilize the vehicle by ordering the driver to shut off the engine and place the keys either on the vehicle roof or drop them onto the ground; fourth, police officers should command the occupants to remain inside the vehicle until ordered to exit; fifth, officers should ascertain if the vehicle has electric windows by telling the driver, "if you have electronic windows, open all the windows of the vehicle" and then order each occupant to extend their hands outside the window of the vehicle; finally, the officers should order the occupants out of the vehicle in order to stabilize each occupant. Id. at ¶9; see also Plaintiff's Appendix, .Exhibit E.

[9] According to Mr. Grossi, insofar as Defendants Moynihan and Borek were both employed by the R.I. State Police for less than ten (10) years and because high-risk vehicle stop tactics have been taught in most law enforcement agencies for well over ten (10) years, Defendants Moynihan and Borek should have been trained in these tactics. Plaintiff's Appendix, Exhibit B, at ¶4.

[10] Defendants aver that the circumstances confronting Defendants Moynihan and Borek were similar to those in U.S. v. Stanfield, 109 F.3d 976 (4th Cir. 1997). See Def's Memo at pp.19-22. They are not. The Plaintiff was not seen in a high crime area, all windows were not tinted and the police did not observe the Plaintiff engage in discussions with a known drug dealer.

[11] Defendants' foot approach to the vehicle exposed the officers, the public and the Plaintiff to increased danger considering that the rear of Plaintiff's vehicle had tinted windows. Plaintiff's Appendix, Exhibit B, at ¶11.

[12] "Police officers who unreasonably create a physically threatening situation in the midst of Fourth Amendment seizure cannot be immunized for the use of deadly force." Estate of Starks v. Enyart, 5 F.3d 230, 234 (7th Cir. 1993).

Accepting this account as true, Defendant Moynihan's conduct cannot be defined as being objectively reasonable.

With respect to the third factor, the Plaintiff maintains that Defendant Moynihan failed to act reasonably by using deadly force to seize the Plaintiff.[13] As described above, after Defendant Moynihan approached Plaintiff's vehicle and attempted to unlock the driver's side door, he pointed to the control panel on the door and asked the Plaintiff to unlock the door. Plaintiff's Appendix, Exhibit A, p. 58. In response to Defendant Moynihan's command, the Plaintiff pulled a hand inside the vehicle and engaged the automatic door lock. Id. At that moment, Defendant Moynihan discharged his weapon and shot the Plaintiff.[14] Id.

The shooting of the Plaintiff while he was attempting to comply with an officer's command constitutes a material factual issue: whether Defendant Moynihan's actions were objectively reasonable, and, if not, were the Plaintiff's Fourth Amendment rights violated. Certainly the trier of fact could conclude that "no reasonable officer would have made the same choice under such circumstances" particularly if the officer, immediately prior, specifically requested the suspect to reach inside the vehicle to unlock the door. Napier v. Town of Wyndham, 187 F.3d 177, 183 (1st Cir.1999); Jennings v. Pare, 2005 WL 2043945, *6 (D.R.I. August 24, 2005).

Material factual issues exist as to whether Defendant Borek and Moynihan's actions were reasonable and therefore Defendants' Motion must be denied.

### D. Plaintiff's Constitutional Claims are not Barred by Qualified Immunity.

Defendants dedicate ample time focusing on purported infirmities relative to the Plaintiff's constitutional claims against Defendants Moynihan and Borek in their individual capacities.

[13] "Where there is no need for force, any force used is constitutionally unreasonable." Fontana v. Haskins, 262 F.3d 871, 880 (9th Cir. 2001).

[14] Defendant Moynihan shot the Plaintiff purportedly because he "believed" the Plaintiff was reaching for a gun. See Defendants' Statement of Undisputed Facts at ¶¶27-28. This belief has no relevance to the Graham analysis. See fn. 4.

(Defendants' Memorandum, pp. 8-39). Defendants' lengthy argument as to the individual capacity claims relies wholly on qualified immunity. The reliance on the foregoing, for the reasons cited both herein and in Plaintiff's Statement of Disputed Facts, is misplaced.

The First Circuit has established a three (3) pronged qualified immunity analysis: first, the court must determine "whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a violation of a constitutional right." Whitfield v. Melendez-Rivera, 431 F.3d 1, 6 (1st Cir. 2005)(citing Saucier v. Katz, 533 U.S. 194, 201, (2001)). Second, the court must "ask whether that constitutional right was clearly established at the time of the alleged violation. Id. Third, the court must decide "whether a reasonable officer, similarly situated, would understand that his or her conduct violated that clearly established right. Id.

First, for the reasons discussed previously, viewing the facts in a light most favorable to the Plaintiff, Plaintiff's constitutional rights under the Fourth Amendment were violated.

Second, Plaintiff's constitutional right not to be unlawfully seized (i.e., shot while unarmed) was clearly established at the time of the incident.[15] Still, Defendants make the incredible assertion that the Plaintiff's constitutional right was not clearly established insofar as relevant preexisting law did not provide "fair notice" to Defendants Moynihan and Borek that their conduct was unlawful. The Plaintiff disagrees.

The Supreme Court held that, in the "obvious case," the generalized holdings in Garner and Graham alone will provide sufficient notice to a police officer that what he/she is doing violates an established right. Brosseau v. Hagen, 543 U.S. 194 (2004); Hope v. Pelzer, 536 U.S. 730, 741 (2002))(quoting Anderson v. Creighton, 483 U.S. 635, 640, (1987)("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning [to police officers], and in other

[15] Significantly, it was Defendants Borek and Moynihan's own actions by failing to adhere to their training in executing the stop that caused the unlawful seizure. See fn.11; 12.

instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful'"); see United States v. Lanier, 520 U.S. 259 (1997). In Lanier, the Supreme Court expressly rejected a requirement that previous cases be "fundamentally similar" to demonstrate that the law is clearly established. In fact, the Lanier Court stated that although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. Lanier, 520 U.S. 261; see also Hope, 536 U.S. at 741.

As to the third prong of the qualified immunity test, the Plaintiff submits that material factual issues exist as to whether a reasonable officer similarly situated would have disregarded their training and shot an unarmed man while he was complying with an order by the police. It is certainly possible that a jury could determine that a reasonable officer would not have approached the Plaintiff's vehicle on foot while the vehicle was occupied, in contradiction of his training and established police standards, and also would not have shot the Plaintiff after instructing him to unlock the vehicle door.

Based on the foregoing, Defendants' contention that they are entitled to qualified immunity from Plaintiff's constitutional claims is meritless and thus Defendants' Motion must be denied.

**E. Plaintiff Has Alleged Facts Sufficient to Establish Liability Under State Law and Common Law.**

Defendants aver that due to the existence of "reasonable (sic.) and the application of qualified immunity" Plaintiff's state law claims found in Count I (negligence), Count III (battery), and Count V (RI State Constitution) of the Complaint should be summarily dismissed. For the reasons discussed below, Defendants' Motion should be denied.

**1. State Constitution**

Relying on Folan v. State, 723 A.2d 287 (R.I. 1999), Defendants claim that the Plaintiff cannot assert a State constitutional claim because he has brought a §1983 claim under the Fourth Amendment. Defendants have misconstrued Folan.

In Folan, the issue before the RI Supreme Court was whether the exclusivity clause in the Workers' Compensation Act ("WCA"), R.I.G.L. §28-29-1, et seq., precluded an individual from bringing workplace discrimination claims. The Court held that the exclusivity clause in the WCA did not bar an independent action for discrimination. Folan, 723 A.2d at 291.

Folan does not bar the filing of §1983 and State constitution claims and therefore Defendants motion should be denied as to Count V.[16]

**2. Negligence**

Defendants aver that there is no evidence to support claims of negligence as to training and supervision and respondeat superior. Defendants also aver that the claim must fail because the actions of the individual Defendants were supported by reasonable suspicion and due to the application of qualified immunity and the public duty doctrine.

The evidence as to training and supervision and the proper manner in which to effectuate a lawful search, seizure and arrest is ample. See Plaintiff's Appendix, Exhibits B & D.

With respect to respondeat superior, the RI Supreme Court has made it clear that "an employer...can be held liable for an employees intentional tort committed against a third party only if the misconduct falls within the scope of employment." Cruz v. Town of North Providence, 833 A.2d 1237, 1240 (R.I. 2003). The Court has also held that an employer can be held liable for the negligent actions of an employee. Saunders v. State, 446 A.2d 748 (R.I. 1982). Actions

[16] There is no bar, as there is under federal law, from Plaintiff seeking damages against the State for violations of his rights under the State Constitution. Jones v. State, 724 F.Supp. 25, 35 (D.R.I. 1989).

tantamount to police brutality however "do not generally fall within the scope" of employment of a police officer. Cruz, 833 A.2d at 1240. Plaintiff maintains that material factual issues exist as to respondeat superior.

Plaintiff has addressed above the contentions as to qualified immunity.

Finally, Defendants claim that Plaintiff's negligence claims are barred due to the public duty doctrine because at the time the Plaintiff was shot and injured, defendants were performing "discretionary public functions." R.I.G.L. §9-31-1.

The State's waiver of sovereign immunity in R.I.G.L. §9-31-1 "allows a plaintiff to recover damages in tort if he or she is able to prove negligence on the part of the state." Haley v. Town of Lincoln, 611 A.2d 845, 848 (R.I. 1992). To maintain a negligence action, a plaintiff "must demonstrate that he or she is owed a legal duty by the state, the breach of which serves as the basis of liability." Id. The Plaintiff maintains that Defendants' contention here is flawed because he has alleged sufficient facts to establish that Defendants owed him a special duty. Gagnon v. State, 570 A.2d 656 (R.I. 1990); Knudson v. Hall, 490 A.2d 976, 978 (R.I. 1985)("the existence of that special duty can be established when a plaintiff has had prior contact with state or municipal officials who then knowingly embark on a course of conduct that endangers the plaintiff, or when a plaintiff has otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen.").

Based on the foregoing, Plaintiff submits that Defendants' motion must be denied as to Count I.

**3. Battery**

Plaintiff has addressed above the contentions as to qualified immunity and submits for the reasons discussed herein that Defendants' motion must be denied as to Count III.

## VI. Conclusion

**WHEREFORE,** for the foregoing reasons, the Plaintiff respectfully prays that Defendants' Motion for Summary Judgment be denied.

Respectfully submitted,
PLAINTIFF,
By his Attorneys,
SINAPI, FORMISANO & CO., LTD.

Dated: June 14, 2006

V. Edward Formisano (5512)
100 Midway Place
Cranston, RI 02920-5707
(401) 944-9690
(401)943-9040 (facsimile)

## CERTIFICATION

TO: Brenda D. Baum, Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that a true copy of the within was mailed, postage prepaid, to the above-named counsel of record this 14 day of June, 2006.

Katherine Kissinger

Vef/Jenkins/memo/obj/msj