**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EMANUEL JENKINS,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No. 04-453S** |
| | : | |
| **STATE OF RHODE ISLAND, et al.,** | : | |
| **Defendants** | : | |

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS

Now comes the Plaintiff, in the above-cited matter, pursuant to Fed.R.Civ.P. 56 and Local Rule 12.1 and does hereby submit his Statement of Disputed Facts.[1]

### I. Material Facts Cited by Defendants in Dispute

1. In ¶¶1-2, 4, Defendants make reference to Plaintiff having a handgun in his vehicle on June 25, 2002. The Plaintiff did not have a handgun or any other weapon in his vehicle. (See Plaintiff's Appendix in Support of Objection to Defendants' Motion for Summary Judgment, Deposition of Plaintiff, Exhibit A at p. 44).

2. In ¶25 Defendants allege that the Plaintiff "pulled at least one hand in from the window" leading Defendant Moynihan to believe that the Plaintiff "was reaching for a gun (¶27). After Defendant Moynihan attempted to open the driver side door of the Plaintiff's vehicle and discovered it was locked, he ordered the Plaintiff to "unlock the door," and as the Plaintiff unlocked the door, he was shot by Defendant Moynihan. (Id. at pp. 57-58).

### II. Additional Facts Precluding Summary Judgment

1. The stop of the Plaintiff by Defendants Moynihan and Borek is identified as a high-risk (felony) vehicle stop. (See Plaintiff's Appendix in Support of Objection to Defendants' Motion for Summary Judgment, Affidavit of David M. Grossi, Exhibit B at ¶3).

[1] Defendants do not cite the source, e.g., deposition transcripts, of the purported "undisputed facts" referenced in their statement of undisputed facts.

2. According to Mr. Grossi the concepts behind high-risk vehicle stop tactics have been taught in most modern progressive law enforcement agencies for well over ten years. In fact, Mr. Grossi has taught these concepts several times within the state of Rhode Island and states that Defendants Borek and Moynihan should have been trained in the proper tactics of high-risk vehicle stops. (Id. at ¶4).

3. Plaintiff filed a motion to compel Defendant State to produce any State Police policies regarding high risk vehicle stops and in response thereto, U.S. Magistrate Martin's ordered Defendant State to produce said policies. (See Plaintiff's Appendix in Support of Objection to Defendants' Motion for Summary Judgment, Order Granting in Part and Denying in Part Motions Heard on May 5/5/05 and Memorandum and Order Requiring State to Submit Materials for In Camera Review, Exhibit C).

4. According to Mr. Grossi, the defendants were "justified in using high-risk vehicle stop tactics; and they did so properly up to the point of both troopers leaving the cover of their respective patrol cars and making foot approaches up to the Plaintiff's vehicle." Mr. Grossi also states that "both troopers properly positioned their individual patrol vehicles behind, and in Defendant Moynihan's case, slightly off to the left side of the Plaintiff's vehicle" and also acknowledges the appropriateness of the verbal commands made by Defendant Moynihan to both occupants, the Plaintiff and his passenger, later identified as Mr. Howard Soares. (Affidavit of David M. Grossi, Exhibit B at ¶6).

5. According to Mr. Grossi, at this point Defendants Moynihan and Borek's "tactical command of the situation began to deteriorate causing Defendant Moynihan to discharge his weapon" resulting in injury to the Plaintiff. (Id.)

6. Absent from Defendant Moynihan's affidavit is the following language from the RI State Police Narrative Report for this incident which states that Defendant Moynihan's intent upon approaching the Plaintiff's vehicle was "to open the door and ask the operator to exit the vehicle." (See Plaintiff's Appendix in Support of Objection to Defendants' Motion for Summary Judgment, RI State Police Narrative Report, Exhibit D).

7. According to Mr. Grossi, "high-risk vehicle stop tactics dictate that officers remain behind cover and control the movement of the occupants by voice commands, thereby reducing both the need <u>for</u> and the possibility <u>of</u> force being used to control the behavior the occupants." (Affidavit of David M. Grossi, Exhibit B at ¶8).

8. According to Mr. Grossi, "there are very few absolutes in tactical law enforcement operations. However, one absolute does exist in high-risk vehicle stops; and that is to *never, ever approach an occupied vehicle*. Basic high-risk vehicle stop tactics exist to enhance the safety of the involved officers and to minimize the potential for force against the occupants." (Id. at ¶8).

9. According to Mr. Grossi, the order of tactical movements in executing a high-risk felony stop are as follows:

(a) "the first objective is for the officers to establish and remain behind cover";

(b) "next, they are trained to announce their purpose and relay their commands to the occupants either by loud voice commands or via the PA system of their squad car";

(c) "third, they are trained to immobilize the vehicle by ordering the driver to shut off the engine and place the keys either on the vehicle roof or drop them onto the ground";

(d) "fourth, they are taught to command the occupants to remain inside the vehicle until ordered to exit";

(e) "fifth, officers are trained to ascertain if the vehicle has electric windows by telling the driver; 'if you have electronic windows, open all the windows of the vehicle' and then order each occupant to extend their hands outside the window of the vehicle. (During this entire time, weapons are trained on the vehicle and the officers remain behind the cover (usually their vehicles), each with an individual zone or area of responsibility)";

(f) "the final objective is to get all the occupants out of the vehicle and ground stabilized. This is accomplished by ordering the driver to 'open the driver side door from the outside' followed by advising the operator to keep his hands 'outside the window, and follow the door as it swings open.' This will cause the driver to exit the vehicle facing away from the officers. The suspect is then ordered to kick the door closed once he is out of the vehicle." (Id. at ¶¶9-10).

10. These very tactics are contained in RI State Police Lesson Plan No. LP 05-114 that was produced by Defendant State in response to U.S. Magistrate Judge Martin's order on Plaintiff's motion to compel. (See Plaintiff's Appendix in Support of Objection to Defendants' Motion for Summary Judgment, RI State Police Lesson Plan No. LP-05-114, Exhibit E).

11. According to Mr. Grossi, at this point, a number of tactics are now available to officers, "the simplest being to order the driver to step away from the vehicle (within the safety zone established by virtue of the offset patrol car) and get down on the ground facing the front of the vehicle, head turned to his (or her) right." Passengers are "then extracted verbally via the same method (preferably via the left side doors) and each is proned-out at least four to five away from any other passenger." At this point, with "one officer acting as a cover officer, the other approaches

each suspect from the left, handcuffs each and pats each down for weapons." ((Affidavit of David M. Grossi, Exhibit B at ¶10).

12. According to Mr. Grossi, in the present case, "none of these basic high-risk vehicle stop tactics were employed." Mr. Grossi further states that "indeed, both troopers violated the only absolute in high-risk vehicle stop tactics; *making foot approaches up to the still occupied vehicle.* This movement was even more improper when considering the fact that the Plaintiff's vehicle had heavily tinted rear windows that made such an approach even more dangerous." (Id. at ¶11).

13. According to Mr. Grossi, had Defendants Moynihan and Borek followed these basic high-risk vehicle tactics articulated above, to wit: announcing their purpose, ordering the driver to discard the keys and two remain inside until ordered to get out, then getting the occupants' hands out the window, followed by the systematic removal of the occupants, all while remaining behind the safe cover of their squad cars, "it is more probable than not that this incident would have been accomplished without any force whatsoever." (Id.)

14. In light of the foregoing, it is Mr. Grossi's expert opinion, within a reasonable degree of certainty, "that the tactics employed by both Defendants Moynihan and Borek were procedurally improper, tactically unsafe, and well below the nationally accepted standard of the law enforcement industry for high-risk vehicle stops." (Id. at ¶12).

15. It is also Mr. Grossi's expert opinion, within a reasonable degree of certainty, "that the conduct and actions of Defendants Moynihan and Borek of these long-standing high-risk vehicle stop tactics were the proximate cause of Defendant Moynihan discharging his weapon resulting in injury to the Plaintiff." (Id. at ¶13).

PLAINTIFF,
By his Attorneys,
SINAPI, FORMISANO & CO., LTD.

V. Edward Formisano (5512)
100 Midway Place
Cranston, RI 02920-5707
(401) 944-9690
(401)943-9040 (facsimile)

Dated: June 14, 2006

**CERTIFICATION**

TO: Brenda D. Baum, Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that a true copy of the within was mailed, postage prepaid, to the above-named counsel of record this 14 day of June, 2006.

Vef/Jenkins..statement.disp.facts