**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EMANUEL JENKINS** | : | |
| | : | |
| **v.** | : | **C.A. NO: 04-453S** |
| | : | |
| **STATE OF RHODE ISLAND, State Police Department, STEVEN M. PARE, individually and in his official capacity as Superintendent of the Rhode Island State Police, MATTHEW MOYNIHAN individually and in his official capacity as a state trooper employed by the State of Rhode Island, Rhode Island State Police, DEREK BOREK, individually and in his official capacity as a state trooper employed by the State of Rhode Island, Rhode Island State Police** | : | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants[1] submit that Plaintiff Emanuel Jenkins' (hereinafter "Jenkins") qualified immunity analysis is fatally flawed. Jenkins contends that as to the third prong of the qualified immunity test, material factual issues exist as to whether a reasonable officer similarly situated would have shot an unarmed man while he was complying with an order by the police. *Plaintiff's Memorandum in Support of his Objection at p. 12.* Contrary to his assertions, it is inappropriate for this Court to assume, even for purposes of summary judgment, that Jenkins was unarmed at the time Trooper Moynihan discharged his weapon.

In conducting a qualified immunity analysis in this case, the Court must look to the "facts and circumstances within [Trooper Moynihan's] knowledge and of which he

[1] By stipulation, Plaintiff dismissed with prejudice any and all claims against Trooper Derek Borek.

had trustworthy information ... sufficient to warrant a prudent man in believing" that Jenkins possessed a gun in his car when he was stopped on June 25, 2002. *See*, Hunter v. Bryant, 112 S.Ct. 534, 537, 502 U.S. 224, 228, 116 L.Ed.2d 589, __ (1991). *See also* Lowinger v. Broderick, 50 F.3d 61, (1st Cir. 1995). Moreover, the "qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" 112 S.Ct. at 537, 502 U.S. at 229.

In this case, Trooper Moynihan had trustworthy information that Jenkins possessed a gun in the car or on his person when he was stopped on June 25, 2002. Trooper Moynihan was confronted with an armed threat as reported to him from information obtained from the Woonsocket Police Department. The information conveyed by the Woonsocket Police Department was that a green Ford Explorer, license plate AARONJ, with deep tinted windows, was carrying two black males, that they had received two incident reports about a possible assault with a dangerous weapon, and to use caution as there was a possible handgun in the vehicle. The credibility of the report was additionally substantiated by the detailed description of the gun, i.e., a silver or a blue small—caliber handgun, possibly a .25 or a .22 automatic. Within approximately an hour after the broadcast, Trooper Moynihan stopped the vehicle. Moreover, there was at the very least reasonable suspicion that Jenkins had committed a crime – assault with a dangerous weapon – at the time his car was stopped.[2] It is these undisputed facts that the Court must use as a backdrop to its qualified immunity analysis. It is irrelevant to the qualified immunity analysis that a search conducted after Trooper Moynihan discharged

---

[2] Jenkins' claim that any force was unreasonable because he had not committed a crime (see Plaintiff's Memorandum in Support of his Objection at p. 8) is not relevant to either a qualified immunity or excessive force analysis.

his weapon and after Jenkins was removed from the vehicle and handcuffed did not locate a gun.

It is also these very facts that this Court must consider when conducting its excessive force analysis. Jenkins once again asks this Court to assume for purpose of the excessive force analysis that he was unarmed and cites several cases in support of the proposition that the use of deadly force is objectively unreasonable against a visibly unarmed plaintiff. *Plaintiff's Memorandum in Support of his Objection at p. 8.* Plaintiff's legal analysis is again flawed.

The issue is "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation…" *Graham v. Connor*, 490 U.S. 386, __, 109 S.Ct. 1865, 1872, 385 L.Ed2d 443 (1989). However, in analyzing the facts, courts should be mindful that ".. 'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation, and the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective," *Id.*; *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272, ___ (2001). The Court should be cautious to avoid a "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene." Id. Moreover, if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *Saucier*, 533 US at 205, 121 S.Ct at 2158.

Based on the foregoing, the Court must conduct its excessive force analysis based on the same facts set forth above and Trooper Moynihan's belief that when he lost sight of Jenkins' hand that he may have been reaching for a .25 or a .22 automatic weapon.

It is true that an "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 109 S.Ct. at 1872. However, in performing these analyses, the Court is in a position where it must determine whether no reasonable officer, placed in Trooper Moynihan's situation, could have perceived the threat that he did – that Jenkins might have been reaching for the .25 or a .22 automatic weapon that Woonsocket Police Department had reported was in this car and an officer or innocent bystander could be harmed. In this case, Trooper Moynihan's conduct cannot be characterized as plainly incompetent and, therefore, he is entitled to a dismissal of this suit.

Wherefore, Defendants pray that this Court grant their motion for summary judgment.

Respectfully Submitted,

DEFENDANTS

By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Brenda D. Baum (5184)
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-3016

CERTIFICATION

I hereby certify that on this 7th day of July 2006 a true copy of the within Reply Memorandum of Law in Support of the Defendants' Motion for Summary Judgment was mailed to:

V. Edward Formisano, Esquire
Sinapi, Formisano & Company
100 Midway Place, Suite 1
Cranston, RI 02920