**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EMANUEL JENKINS,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No. 04-453S** |
| | : | |
| **STATE OF RHODE ISLAND, et al.,** | : | |
| **Defendants** | : | |

# PLAINTIFF'S PRETRIAL MEMORANDUM

PLAINTIFF
By his attorneys,
SINAPI, FORMISANO & COLEMAN, LTD.

s/s V. Edward Formisano
V. Edward Formisano (5512)
100 Midway Place, Suite 1
Cranston, Rhode Island 02920-5707
(401)944-9690
(401)943-9040 (facsmile)

## I. Evidence Supporting Plaintiff's Claims

### A. Introduction

Plaintiff filed this action seeking relief for injuries that he suffered as a result of acts and/or omissions committed by Defendants in violation of the Fourth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, Article I, §6 of the Rhode Island Constitution and common law.

### B. Witnesses Plaintiff Expects to Testify in Support of Claims

#### 1. Plaintiff

The Plaintiff will testify that on June 25, 2002, he and an acquaintance, Howard Soares, traveled from Providence to Woonsocket to drop-off the Plaintiff's daughter at her mother's home. He will testify that he was operating a Ford Explorer with tinted windows in the rear of the vehicle.

The Plaintiff will testify that while returning to Providence, he passed a barbershop in Woonsocket. The Plaintiff will testify that as he drove by the barbershop, he observed an individual who had previously attacked him. Words were exchanged and after 30 seconds, the Plaintiff drove off towards Providence.

Once on Route 146, the Plaintiff noticed a police cruiser, operated by Defendant Moynihan, following him. The Plaintiff will testify that when he took the Thurbers Avenue exit off of Route 95, the police cruiser activated its lights and the Plaintiff pulled over to the side of the road. After the Plaintiff pulled over, another police cruiser appeared, operated by Trooper Borek ("Borek"). The Plaintiff will testify that when Defendant Moynihan exited his cruiser, he pointed his service weapon at the Plaintiff and ordered him to put his hands out the window of his vehicle. The Plaintiff will testify that he rolled down his window and placed his hands out

the window and that Mr. Soares also placed his hands out the window. During this time period, the Plaintiff will testify that he was facing Defendant Moynihan, who had his service weapon aimed at the Plaintiff, and that Defendant Borek was positioned on the passenger side of the Plaintiff's vehicle with a shotgun aimed at Mr. Soares.

After the Plaintiff and Mr. Soares placed their hands out the windows of the vehicle, he will testify that Defendant Moynihan approached the driver's side of Mr. Jenkins' vehicle with his service weapon aimed at the Plaintiff. He will testify that Defendant Moynihan then attempted to open the driver's side door which was locked. The Plaintiff will testify that Defendant Moynihan then pointed at the control to unlock the door and told the Plaintiff to "unlock the door." He will testify that he complied by removing his hand from outside of the vehicle and moving it slowly towards the control that unlocked the door. The Plaintiff will testify that as he engaged the control, Defendant Moynihan discharged his service weapon and shot the Plaintiff.

The Plaintiff will testify that Defendant Moynihan and/or Borek then called for medical assistance, that an ambulance responded to the scene of the incident, and that he was then transported to Rhode Island Hospital.

The Plaintiff will testify that upon his discharge from the hospital, he was taken to the State Police Barracks in Lincoln, Rhode Island and that he was subsequently arrested and charged with driving with a suspended license and held on an outstanding warrant in connection therewith.

The Plaintiff will also testify about the emotional and physical pain and suffering he endured as a result of the actions and/or omissions of the Defendants

**2. Jacqueline Jenkins**

Mrs. Jenkins will testify about her son's injuries.

**3. David M. Grossi**

This witness is a expert and will testify about the training police receive in executing high risk felony car stops and he will also give his expert opinion on the tactics used by Defendant Moynihan in executing the stop and the causal relationship between the tactics employed and the shooting of the Plaintiff.

**4. James Stephenson**

This witness will testify about what he observed during the stop of the Plaintiff on June 25, 2002.

**5. Lawrence Trombetti**

This witness will testify about what he observed during the stop of the Plaintiff on June 25, 2002.

## II. Law Supporting Plaintiff's Claims

### A. Claims under 42 U.S.C. §1983

#### 1. Introduction

The Plaintiff intends to establish sufficient facts at trial from which a finder of fact may reasonably infer that Defendant Moynihan, acting under the color of state law, by his acts and/or omissions, caused the Plaintiff to be illegally seized in derogation of his right to be free from unreasonable seizures, and in so doing, violated Plaintiff rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983. Tennessee v. Garner, 471 U.S. 1 (1985); Graham v. Connor, 490 U.S. 386 (1989); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1 (1st Cir. 1995); Gaudreault v. Municipality of Salem, Mass., 923 F.3d 203 (1st Cir. 1990); Ruiz v. Gonzalez Caraballo, 929 F.2d 31 (1st Cir. 1991).

**2. Seizure**

A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989). Stated differently, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1967). A shooting by an officer can constitute a "seizure" under the Fourth Amendment. Tennessee v. Garner, 471 U.S. at 7 ("there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"); see also Ciminillo v. Streicher, 434 F.3d 461, 466 (6th Cir. 2006); Smith v. Cupp, 430 F.3d 766,774 (6th Cir. 2005); Memo. and Order Requiring State to Submit Materials for In Camera Review (C.A. 04-453 S)(May 15, 2006)(Martin, U.S. Mag. J.)).

In the present case, there can be no question that after the Plaintiff was shot by Defendant Moynihan, he was "seized" under the Fourth Amendment.

A defendant state actor violates the Fourth Amendment and is liable under §1983 only if the particular seizure was "objectively unreasonable." Graham v. Connor, 490 U.S. at 394; see Maiorana v. MacDonald, 596 F.2d 1072 (1st Cir. 1979).

In the case at bar, Defendants used deadly force in seizing the Plaintiff.[1] In "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham 490 U.S. at 396 quoting United States v. Place, 462 U.S. 696, 703 (1983).

[1] "The use of deadly force is constitutional only if, at a minimum, a suspect poses an immediate threat to police officers or civilians." Jarret v. Town of Yarmouth, 331 F.3d 140, 149 (1st Cir. 2003); see Garner, 471 U.S. at 11.

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application…however, its' proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979); see also Garner, 471 U.S. at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of…seizure"). Moreover, the "'reasonableness' inquiry in is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.

**3. Qualified Immunity**

The Plaintiff anticipates that individual Defendants will move for a directed verdict with respect to the §1983 and State constitutional claims due to qualified immunity.

It is well-established that government officials are "shielded from liability from civil damages" under §1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Bilida v. McCleod, 211 F.3d 166, 174 (1st Cir. 2000) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The test as to the viability of qualified immunity applies is whether "under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violate[d] that right'" Bilida, 211 F.3d at 174 (citing Berthiaume v. Caron, 142 F.3d 12, 15 (1st Cir. 1998)). "Qualified immunity leaves 'ample room for mistaken judgments' and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Bilida, 211 F.3d at 174 (quoting Malley v. Briggs, 475 U.S. 335, 341, 343 (1986)).

The First Circuit has established a three (3) pronged qualified immunity analysis: first, the court must determine "whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a violation of a constitutional right." Whitfield v. Melendez-Rivera, 431 F.3d 1, 6 (1st Cir. 2005)(citing Saucier v. Katz, 533 U.S. 194, 201, (2001)). Second, the court must "ask whether that constitutional right was clearly established at the time of the alleged violation. Id. Third, the court must decide "whether a reasonable officer, similarly situated, would understand that his or her conduct violated that clearly established right. Id.

The Plaintiff maintains that a reasonable jury could find based on the evidence to be offered at trial that a reasonable officer would have known that by seizing the Plaintiff in the manner at issue would have run afoul of Plaintiff's constitutional right to be free from unreasonable seizures.

**4. Claim Under Article I, §8 of the Rhode Island Constitution**

For the same reasons set forth above with respect to Plaintiff's federal constitutional claim, Plaintiff intends to offer evidence at trial establishing violations of his right to be free from an unreasonable seizure under the Rhode Island Constitution.

**5. Claim for Negligence**

Plaintiff also alleges that Defendant Moynihan, by his acts and/or omissions, failed or refused to exercise reasonable care to protect the Plaintiff from reasonably foreseeable harm, causing Plaintiff to suffer physical and mental injuries. See Mills v. State Sales, Inc., 824 A.2d 461, 467 (R.I. 2003).

6. **Negligence -- Respondeat Superior**

The Rhode Island Supreme Court has made it clear that "an employer…can be held liable for an employees intentional tort committed against a third party only if the misconduct falls

within the scope of employment." Cruz v. Town of North Providence, 833 A.2d 1237, 1240 (R.I. 2003). The Court has also held that an employer can be held liable for the negligent actions of an employee. Saunders v. State, 446 A.2d 748 (R.I. 1982).

The following elements must be proved to establish negligence under the doctrine of respondeat superior: a duty of reasonable care owed by a servant towards an individual to whom his or her master owes a duty of care, a negligent act and/or omission of the servant acting within the scope of his or her employment, which proximately causes injury to the person and/or property to whom the duty of care is owed. See Saunders v. State, 731 F.2d 81 (1st Cir. 1984).

The Plaintiff alleges that the State is liable under the doctrine of respondeat superior for the negligence of its agent—Defendant Moynihan— an officer employed by the State, whose negligent actions and/or omissions were within the scope of his employment and was the proximate cause of the injuries suffered by the Plaintiff. Saunders, 446 A.2d at 751-752; R.I.G.L. §9-31-1.

**7. Claims for Assault and Battery**

The Plaintiff alleges that Defendant Moynihan caused the Plaintiff to reasonably fear imminent bodily harm by his physically threatening acts and intended to cause and did indeed cause offensive contact with the Plaintiff by shooting him. Picard v. Barry-Pontiac-Buick, Inc., 654 A.2d 690 (R.I. 1995); Proffit v. Ricci, 463 A.2d 514 (R.I. 1983).

## III. List of Potential Exhibits

A. Photographs of the area where the Plaintiff was stopped.

B. Photographs of the injury the Plaintiff sustained due to being shot.

C. Plaintiff's medical records and bills from Rhode Island Hospital.

D. Curriculum Vitae and report of David M. Grossi.

E. RI State Police Lesson Plan No. LP-05-114.

F. RI State Police General Order- 56A2.

## IV. <u>Anticipated Motions in Limine</u>

The Plaintiff will file a motion in limine wherein he seeks to bar testimony or the introduction of any evidence that relates to his arrest record as well as his criminal record subsequent to the incident at issue

The Plaintiff will also file a motion in limine wherein he seeks to bar Defendants' proffer of expert testimony by Michael Brave, J.D., M.S., C.L.S., C.L.E.T., C.P.S., C.S.T.

The Plaintiff anticipates filing said motions in the next 1-2 weeks.

## V. <u>Jury Instructions</u>

### A. <u>Introduction</u>

This action was brought by the Plaintiff seeking relief for injuries he suffered as a result of acts and/or omissions committed by Defendant Moynihan in violation of the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983 and in violation of Article I, §6 of the Rhode Island Constitution. The Plaintiff has also brought common law claims for negligence, assault and battery.

### B. <u>Claims Under 42 U.S.C. §1983</u>

1. The Plaintiff alleges that Defendant Moynihan, acting under color of state law, by their individual and concerted acts and/or omissions, caused the Plaintiff to be illegally seized in derogation of Plaintiff's constitutional right to be free from unreasonable seizures causing Plaintiff to suffer damages, and thereby deprived Plaintiff of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to the Civil Rights Act, known as 42 U.S.C. §1983.

2. The Civil Rights Act is a federal law - 42 U.S.C. §1983 - which provides:

> Every person, who, under color of any statute, ordinance, regulation custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. We all have certain rights, privileges, and immunities secured or protected by the Constitution and laws of the United States.

4. These rights, privileges and immunities include the right to be free from a unreasonable seizure of one's person protected by the Fourth Amendment of the United States Constitution.

5. In order for Plaintiff to prove his civil rights claims against Defendant Moynihan under §1983, he must establish the following facts:

a. That Defendant Moynihan acted under the color of some law, custom or policy of a State, City or Town;

b. That Defendant Moynihan's actions and/or conduct deprived the Plaintiff of one of his federal constitutional rights; and

c. That Defendant Moynihan's actions and/or conduct were the proximate cause of damages resulting to the Plaintiff.

6. Each alleged deprivation of a constitutional right must be addressed separately by you during your deliberations.

7. **Burden of Proof - Fourth Amendment Claim**

Usually, in a civil case the plaintiff has the burden of proving his or her case. A claim made under the Fourth Amendment, however, is somewhat different. A defendant bears the burden of

proving by preponderance of the evidence his or her compliance with each of the elements of a reasonable seizure as I will explain them to you, once a plaintiff has demonstrated that a seizure occurred. However, a defendant only has the burden of proof on a plaintiff's Fourth Amendment claim; a plaintiff has the burden of proof on all other claims against a defendant.

8. **Color of Law**

a. In order for Plaintiff to prove his civil rights claims, the first element the Plaintiff must show is that Defendant Moynihan was acting "under color of law." Acts are done "under color of law" not only when officials act within the bounds and limits of their lawful authority, but also when they act unlawfully beyond those limits. However, for such unlawful acts to be under color of law they must be done by an official while he or she is purporting to act in the performance of his or her official duty.

b. The law under which an official is acting, or purporting to act may be a state statute or city ordinance or regulation or any governmental policy or custom.

**9. Seizure**

A seizure occurs, within the meaning of the Fourth Amendment, when a reasonable person does not feel free to ignore a request of police. In other words, it consists of a restraint of liberty such that the person seized reasonably believes he is not free to leave.

The Fourth Amendment requires that a seizure be reasonable. In other words, a seizure is unlawful when it is effected in an unreasonable manner. The reasonableness of a seizure depends on factors such as the severity of the crime at issue, whether the person detained posed an immediate threat to the safety of police or others, and whether the person detained was actively resisting arrest or attempting to evade arrest by flight. Apprehension by use of deadly force is a seizure subject to the reasonableness requirement of

the Fourth Amendment. A seizure accompanied by unnecessary deadly or excessive force violates the reasonableness provision of the Fourth Amendment. When a police officer uses excessive force, a plaintiff may recover damages against that police officer.

Excessive force by police officers, even if less than deadly, is not to be deployed lightly. To put it in terms of the test applied: the degree of force used by police is permissible only when a strong government interest *compels* the employment of such force. The essence of the test is that the force which is applied must be balanced against the *need* for that force.

10. **Proximate Cause**

a. I will now instruct you as to proximate cause. As I told you previously, the last essential element which a plaintiff must prove in a civil rights claim is that the injuries that Plaintiff claims to have sustained were proximately caused by the conduct of a Defendant. This means the Plaintiff must prove that his injuries were either a direct result or a reasonably probable consequence of the complained of conduct.

b. A defendant is not legally responsible for any harm caused to a plaintiff by another. A defendant is responsible only for harm for which he or she is the proximate cause.

c. The Plaintiff alleges that he suffered physical pain and suffering and emotional and mental distress, and that he incurred medical and legal expenses, all of which were proximately caused by Defendants Moynihan's conduct.

d. If you find Defendant Moynihan liable to the Plaintiff, you may award only such compensatory damages as were proximately caused by Defendant Moynihan.

C. **Unreasonable Searches and Seizure in Violation of Article 1, §6 of the Rhode Island Constitution**

1. The Plaintiff alleges that Defendant Moynihan, acting under state law, by his actions and/or omissions, caused Plaintiff to be unlawfully seized in derogation of Plaintiff's

constitutional right to be free from unreasonable seizures and thereby deprived Plaintiff of rights secured under Article 1, §6 of the Rhode Island Constitution.

2. One of the rights protected in Article 1, §6 of the Rhode Island Constitution is the right to be free from unlawful seizures.

3. **Unreasonable Seizure**. As stated previously, a seizure must be reasonable. In other words, a seizure is unlawful when it is effected in an unreasonable manner. The reasonableness of a seizure depends on factors such as the severity of the crime at issue, whether the person detained posed an immediate threat to the safety of police or others, and whether the person detained was actively resisting arrest or attempting to evade arrest by flight. As also stated previously, apprehension by use of deadly force is a seizure subject to the reasonableness requirement. A seizure accompanied by unnecessary deadly or excessive force violates the reasonableness provision of the State Constitution. When a police officer uses excessive force, a plaintiff may recover damages against that police officer.

Excessive force by police officers, even if less than deadly, is not to be deployed lightly. To put it in terms of the test applied: the degree of force used by police is permissible only when a strong government interest *compels* the employment of such force. The essence of the test is that the force which is applied must be balanced against the *need* for that force.

**D. Negligence**

1. The Plaintiff further alleges that Defendant Moynihan, by his acttions and/or omissions, failed or refused to exercise reasonable care to protect the Plaintiff from reasonably foreseeable harm, causing Plaintiff to suffer damages.

2. In order to find Defendant Moynihan negligent, you must first determine that he failed or refused to exercise a duty of care he owed towards the Plaintiff.

3. Defendant Moynihan owed a duty of care to the Plaintiff to effectuate his seizure in a reasonable manner; that is, using only as much force as was necessary to effectuate the Plaintiff's seizure.

4. If you find that Defendant Moynihan failed or refused to exercise this duty of care owed to the Plaintiff, you must next determine if this failure or refusal was the proximate cause of the Plaintiff's injuries.

5. If you find that the failure or refusal to exercise this duty of care was the proximate cause of the Plaintiff's injuries, then I instruct you to find that the Defendant Moynihan was negligent.

**E. Assault**

1. The Plaintiff also alleges that Defendant Moynihan assaulted him.

2. An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm. It is the plaintiff's apprehension of injury which renders the defendant's act compensable. Words alone are never sufficient to establish an assault. However, if words are accompanied by a physical act which increases the plaintiff's fear of imminent bodily injury, that is sufficient to establish an assault.

**F. Battery**

1. The Plaintiff has also brought a claim for battery against Defendant Moynihan.

2. A battery refers to an act that was intended to cause and in fact does cause an offensive contact with or unconsented touching of or trauma upon the body of another thereby resulting in the consummation of an assault.

3. An intent to injure a plaintiff, however, is unnecessary in a situation in which the defendant willfully sets in motion a force that in the ordinary course causes an injury.

4. In order to recover for a battery, a plaintiff must show that there was an offensive contact with or nonconsensual touching of a body of another. Thus, if a person accidentally and/or inadvertently touches another individual that would not constitute a battery.

5. In order to constitute a battery, a person must intend to cause the offensive contact or nonconsensual touching of another person.

**G. Vicarious Liability**

1. Under state law, an employer is responsible for the actions of its employees committed while that employee is acting within the scope of the employee's duties and while engaged in the employer's business. This type of liability is known as vicarious liability.

2. The Plaintiff alleges that the State of Rhode Island is liable for the negligence of its agent, Defendant Moynihan, a police officer employed by the State, whose negligence within the scope of his employment was the proximate cause of the injuries suffered by the Plaintiff due to Defendant Moynihan's conduct.

3. If you find that Defendant Moynihan's negligent acts and/or omissions were the proximate cause of the Plaintiff's injuries, and that at the time of the acts and/or omissions which caused the injuries that Defendant Moynihan was employed by the State of Rhode Island and acting within the scope of his duties as police officer, you may find the State of Rhode Island responsible for the Plaintiff's damages.

**H. Qualified Immunity**

1. "Qualified immunity" is an affirmative defense that must be pleaded and proved by a defendant official. Harlow v. Fitzgerald, 457 U.S. 800 (1982). As established by the U.S. Supreme Court, "government officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Id. at 818.

2. The immunity available to a state official as a defense to a claim under §1983 is governed by this standard, not state law. Id. at 818, n.30. Neither a municipality nor a municipal official sued in his or her official capacities is entitled to qualified immunity. Leatherman v. Tarant County Narcotics Intelligence Coordination Unit, 507 U.S. 163 (1993); Scarpa v. Murphy, 624 F. Supp. 33 (D. Mass. 1985). Accordingly, even if you find that Defendant Moynihan's conduct was protected by qualified immunity, this will not shield the State of Rhode Island for liability according to the standard that I previously described to you.

3. Individual liability of a public official may be established where it is shown that the challenged conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990)("Where persons are deprived of property interests, it has long been 'clearly established' that due process safeguards must be afforded.").

4. Indeed, all that is required to overcome any claim of qualified immunity is that "[t]he contours of the right . . . be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

5. In determining the objective reasonableness required by the qualified immunity standard, "a reasonable public official . . . is expected to know the law." Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987); "When a right is well established . . . no one who does not know about it can be called 'reasonable' in contemplation of the law." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

I. **Damages**

1. **General Instructions**

In the event you find for the Plaintiff, you may consider awarding him damages. In your consideration of damages, you will be concerned with three distinct kinds of damages. They are:

a. actual or compensatory damages;

b. punitive damages; and

c. nominal damages.

2. **Burden of Proof**

a. The burden is on the Plaintiff to prove by a fair preponderance of the evidence that he has suffered damages as a proximate result of Defendants' acts and/or omissions.

b. The Plaintiff should be compensated for all damages proximately resulting from Defendants' acts and/or omissions.

c. Damages must be supported by competent evidence; they cannot be proven by speculation.

d. The burden is also on the Plaintiff to prove by a fair preponderance of the evidence the extent or amount to which he has suffered one of the following elements of damages. Tom Shaw, Inc. v. Derecktor, 639 F. Supp. 1064 (D. R.I. 1986); Jackson v. Choquette & Co., Inc., 80 A.2d 172 (R.I. 1951).

3. **Actual or Compensatory Damages**

a. Compensatory damages can be defined as that amount of dollars which will compensate the Plaintiff for the loss or injury he sustained by reason of a Defendant's act and/or omission. The rationale behind compensatory damages is to restore a person to the position he/she was in prior to the harm or the loss. Compensatory damages, then, is the amount of

money which will replace, as near as possible, the loss or harm caused to a person. Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975). More simply, it is the amount of money which will make good or replace the loss caused by the wrong done by a Defendant.

b. In determining the proper measure of compensatory damages, you must keep in mind the legal principle that an injured party should be fully compensated for whatever injury he or she may have sustained. DeSpirito v. Bristol County Water Co., 102 R.I. 50, 53-54, 227 A.2d 782 (1967).

c. **Pain and Suffering**

1) The Plaintiff claims that he experienced pain and suffering, including physical pain and suffering and emotional and mental distress as a result of Defendants' unlawful conduct.

2) If you should find that the Plaintiff is entitled to a verdict, you also should award him an amount to compensate him for any physical pain and suffering and mental anguish he suffered as a proximate result from the injury in question.

3) It is difficult to measure physical pain and suffering and mental anguish and humiliation; nevertheless, you may not speculate -- your award must be based on the evidence and must be in an amount which is fair and adequate.

d. **Emotional or Mental Distress**

1) The method by which a plaintiff usually proves that he or she suffered emotional or mental distress is by demonstrating the nature and circumstances of plaintiff's alleged civil rights violation and its effect on him or her. Emotional or mental distress may be evidenced by a plaintiff's conduct and the testimony of others who observed it.

2) If you find that the Plaintiff's rights were violated by Defendants and that this violation proximately caused the Plaintiff emotional or mental distress, then you may consider awarding compensatory damages to Plaintiff for such distress and injury.

3) Mental suffering is a compensable element of damages whether the underlying act that caused the plaintiff's injuries were purely mental, purely physical or a combination thereof. Mental suffering may include nervousness, anxiety, worry, shock, humiliation, embarrassment or indignity. Arlan v. Cervini, 478 A.2d 976 (R.I. 1984).

4. **Nominal Damages**

a. If you find that the Plaintiff is entitled to a verdict according to these instructions, but do not find that the Plaintiff has proved compensatory damages, then you should return a verdict for the Plaintiff in some nominal sum such as one dollar.

b. The award of a nominal sum would not prevent you from awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these instructions.

c. However, you may not award the Plaintiff both compensatory and nominal damages, for the reason that nominal damages may be awarded only if you find that the Plaintiff has not proved that he is entitled to compensatory damages, but has been harmed in some way.

5. **Punitive Damages**

a. In addition to compensatory damages which attempt to make a plaintiff whole, the law permits you to award a plaintiff punitive damages under certain limited circumstances. The purpose of this kind of damages is to punish a wrongdoer for misconduct, and to serve as a warning to others not to engage in the same or similar conduct. Palmisano v. Toth, 624 A.2d

314, 317-18, (R.I. 1993); Morin v. Aetna Casualty And Surety Co., 478 A.2d 964, 967 (R.I. 1984).

b. You may award the Plaintiff punitive damages whether or not you find that he suffered actual or compensatory damages. That is, you need not find that the Plaintiff incurred an economic or tangible loss in order to award punitive damages.

c. Further, you may not award punitive damages against a defendant unless you find, by a preponderance of the evidence, that a defendant's actions were maliciously, willfully, wantonly or recklessly done and are found to be so willful, reckless, or wicked that they amount to criminality. Id.

d. In addition, an award of nominal damages or actual damages will not prevent you from awarding punitive damages.

e. An act, or a failure to act, is done with "malice" if prompted or accompanied by ill will, spite, or grudge toward a plaintiff. You may consider all the evidence in the case in making this determination.

f. An act is done "willfully" if it is done voluntarily and intentionally, with the specific intent to do something the law forbids; that is to say, with a purpose either to disobey or to disregard the law.

g. Any act or omission is "wantonly" done if done in callous or reckless disregard of, or indifference to the rights of one or more persons, including the injured person.

h. "Recklessly" means with indifference to consequences. If a person acts without regard to possible consequences, he may be found to have acted recklessly.

i. Intent ordinarily may not be proved directly because there is no way to directly examine the thoughts of another human being. You may, however, infer a person's intent from

surrounding circumstances. You may consider any statement made or act done or omitted by a person whose intent is in issue, and all other facts and circumstances which indicate his or her state of mind.

**J. Importance of Right**

You may also consider the importance of the constitutional right or rights violated in our system of government, the significance which this particular issue had for the Plaintiff, and the significance of the right or rights in the context of the activities in which the Plaintiff was engaged at the time of the violation of the right or rights.

**K. Credibility**

I instruct you that you may reject testimony of a witness if such testimony has been impeached or contradicted by positive testimony or by circumstantial evidence, or because of inherent improbabilities in the testimony, or because of contradictions in the testimony or because the testimony is totally at variance with undisputed physical facts. Landry v. Vogel, 234 A.2d 353 (R.I. 1967).

## VI. Special Interrogatories

**A. Defendant Moynihan**

1. Did Defendant Moynihan unlawfully seize the Plaintiff, Emanuel Jenkins, in violation of his Fourth Amendment rights? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Emanuel Jenkins, as damages for Defendant Moynihan's unlawful seizure?

Answer in dollars or NONE: Compensatory damages: $________________
Punitive damages: $________________

2. Did Defendant Moynihan commit an assault upon the Plaintiff, Emanuel Jenkins? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Emanuel Jenkins, as compensatory and/or punitive damages for the assault committed by Defendant Moynihan?

Answer in dollars or NONE: Compensatory damages: $_________________
Punitive damages: $_________________

3. Did Defendant Moynihan commit a battery upon the Plaintiff, Emanuel Jenkins? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Emanuel Jenkins, as damages for the battery committed by Defendant Moynihan?

Answer in dollars or NONE: Compensatory damages: $_________________
Punitive damages: $_________________

4. Was Defendant Moynihan's negligence the proximate cause of the injuries sustained by the Plaintiff, Emanuel Jenkins? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Emanuel Jenkins, as damages for the negligent actions of Defendant Moynihan?

Answer in dollars or NONE: Compensatory damages: $_________________

5. By using force to seize the Plaintiff, Emanuel Jenkins, and thereby effecting his seizure, did Defendant Moynihan negligently fail or refuse to protect Plaintiff, Emanuel Jenkins,

from reasonably foreseeable harm? DO NOT ANSWER THIS QUESTION IF YOU RESPONDED "YES" TO QUESTION 3 IN SECTION A ABOVE, AND MOVE ON TO SECTION B. Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If you answered NO, skip to section B. If you answered YES, answer question 6.

6. Was Defendant Moynihan's negligence the proximate cause of the injuries sustained by the Plaintiff, Emanuel Jenkins? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Emanuel Jenkins, as damages for the negligent actions of Defendant Moynihan?

Answer in dollars or NONE: Compensatory damages: $_______________

**B. Defendant State of Rhode Island**

1. ANSWER THIS QUESTION ONLY IF YOU ANSWERED "YES" TO ANY QUESTIONS OTHER THAN 1 IN SECTION A ABOVE. Was the assault, battery, or negligence you found committed by Defendant Moynihan during the course of and incident to the performance of his duties as a police officer employed by the State of Rhode Island? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Emanuel Jenkins, as damages he sustained against the State of Rhode Island under the doctrine of respondeat superior as the employer of Defendant Moynihan?

Answer in dollars or NONE:

| | | |
|---|---|---|
| Assault: | Compensatory damages: | $____________ |
| Battery: | Compensatory damages: | $____________ |
| Negligence: | Compensatory damages: | $____________ |

### VII. Estimated Time of Trial

Plaintiff's counsel estimates that it will take two to three days to present Plaintiff's case-in-chief and that it will take approximately five to seven days to litigate the entire case.

### VIII. Certificate of Counsel

The undersigned counsel of record for the Plaintiff hereby certifies that counsel has to the best of his abilities complied with the requirements of the Pretrial Order.

PLAINTIFF
By his attorneys,
SINAPI, FORMISANO & CO., LTD.

/s/ V. Edward Formisano
V. Edward Formisano (5512)
100 Midway Place, Suite 1
Cranston, Rhode Island 02920-5707
(401)944-9690
(401)943-9040 (facsimile)

### CERTIFICATION

TO: Brenda D. Baum, Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that a true copy of the within was served upon the above-named on this 13th day of September, 2006.

/s/V. Edward Formisano

vef\clients\jenkins\pretrial.memo.